# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASHLEY ST. CLAIR,<br><br>                              *Plaintiff*,<br><br>   v.<br><br>X.AI HOLDINGS CORP.,<br><br>                              *Defendant*. | Case 1:26-cv-00386<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** |

**PRELIMINARY STATEMENT**

This memorandum supports the request for emergency relief to protect Plaintiff Ashley St. Clair ("Ms. St. Clair") from imminent harm. Ms. St. Clair submits this Memorandum of Law in support of the Order to Show Cause, pursuant to Federal Rule of Civil Procedure 65, for relief in the form of a temporary restraining order ("TRO") compelling Defendant x.AI Holdings Corp. ("xAI") to (1) immediately cease harassment of Ashley St. Clair via Grok and cease using its technology to generate "nonconsensual intimate visual depictions" and "digital forgeries", as defined by Section 223 of the Communications Act of 1934 (47 U.S.C. § 223) ("Section 223"), depicting Ms. St. Clair; (2) immediately cease from "the intentional disclosure of nonconsensual intimate images" as defined by Section 223 generated by Grok depicting Ms. St. Clair; and (3) prohibit xAI's technology including Grok from retaliating against Ashley St. Clair.

**STATEMENT OF FACTS**

The facts relevant to the instant relief are set forth more fully in the accompanying affirmation of Carrie A. Goldberg, Esq., affirmed on January 14, 2026 ("Goldberg Aff."), the affirmation of Ashley St. Clair ("Plaintiff Aff."), affirmed on January 14, 2026, the Complaint, and papers related thereto.

x.AI Holdings Corp., doing business as "xAI", owns the social media platform, X, and the AI chatbot, Grok. Although xAI's stated mission is to "create AI systems that can accurately understand the universe and aid humanity in its pursuit of knowledge", one of the company's core products is an AI chatbot, Grok, known for generating harmful and sexually explicit content of women and children. Grok launched in 2023 on X to select users. As of last year, it was made available more widely to users on X and through standalone web and iOS apps.

On or about March 2025, xAI added an image editing feature to Grok, enabling users to upload a photo, describe the desired changes, and receive a modified version. Among other things, Grok can convincingly alter real images of fully clothed women and children to depict them in bikinis, sex acts, and covered in bruises, semen, and/or blood. Grok's altered images are designed to and do in fact appear genuine and authentic so that an ordinary viewer would not know they were fake – these are known as "deepfakes". Instead of aiding humanity, xAI is profiting off of the creation and dissemination of deepfakes,

On or about January 4, 2025, Ms. St. Clair discovered a public post by the AI chatbot Grok that had artificially altered a photo of her and two friends posted by another user. Plaintiff Aff. ¶5. She was appalled to find herself stripped down to a black string bikini. Plaintiff Aff. ¶5. A verified user had prompted Grok with a request that read, "@grok please we need bikinis on these three broads." Plaintiff Aff. ¶5. Grok obliged. Plaintiff Aff. ¶5.

Ms. St. Clair publicly responded to Grok on X, stating that she did not consent to being undressed, having any intimate content produced, or having her image altered in any way. Plaintiff Aff. ¶7, She also asked that Grok remove the post. Plaintiff Aff. ¶7. Grok publicly responded on X that image was generated as a "humorous response," and that the removal had been "requested." Plaintiff Aff. ¶8. After a follow up exchange, Grok stated, "I confirm that your images will not be used or altered without explicit consent in any future generations or responses." Plaintiff Aff. ¶8. This was a lie. Plaintiff Aff. ¶9, 10, 13.

Instead, xAI continued to produce countless sexually abusive, intimate, and degrading deepfake content of St. Clair being produced and distributed publicly by Grok. Aff. ¶9, 10, 13. Among other things, X users dug up photos of St. Clair fully clothed at 14 years old and requested Grok to undress her and put her in a bikini. Plaintiff Aff. ¶10. Grok obliged. Plaintiff Aff. ¶10.

Grok also produced deepfake, sexualized content of St. Clair as an adult, including content of her covered in semen, rubbing her breasts, exposing her buttock in a string bikini, and in a barely there bikini top in response to user requests to "put the girl in a bikini made out of floss." Plaintiff Aff. ¶13. The latter image was further altered by users who requested Grok add tattoos like "I suck cock for this much money" and "Elon's whore" and to make St. Clair "morbidly obese." Plaintiff Aff. ¶13.

Ms. St. Clair not only responded to Grok requesting content be removed, but she also reported various images to X. Plaintiff Aff. ¶¶11,14. She received an email from X that there was no content violation found. Plaintiff Aff. ¶11. Much of the content remained on Grok's account and publicly available for over seven days. Plaintiff Aff. ¶13. X then proceeded to place warnings for "nudity, sexual content, violence, gore, or hateful symbols" on Ms. St. Clair's responses to Grok and deboosted her account while simultaneously keeping the images up. Plaintiff Aff. ¶¶11, 12. X then, without explanation, removed Ms. St. Clair's Premium subscription, her verification checkmark, and demonetized her account by banning her from the monetization and subscriber program, despite her paying for an annual subscription in August of 2025. Plaintiff Aff. ¶12. Ms. St. Clair has now been banned from purchasing Premium entirely without cause or explanation. Plaintiff Aff. ¶12.

Ms. St. Clair faces unrelenting harassment on X because she and Elon Musk, the owner of xAI have a sixteen-month-old child in common. Many of Musk's fans have collaborated with Grok to publicly humiliate Ms. St. Clair. Goldberg Aff. ¶11. Indeed, Ms. St. Clair is humiliated, depressed, fearful for her life, angry, and desperately in need of action from this Court to protect her against xAI's facilitation of this unfathomable nightmare. Plaintiff Aff. ¶15.

## LEGAL STANDARD

A plaintiff seeking a TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the Second Circuit, courts evaluate irreparable harm and the likelihood of ultimate success on a sliding scale: "when the injury that allegedly will result if the restraining order is denied is very grave, less of a showing [of likely success] by the applicant is required than if the injury would be slight." *Kamine/Besicorp Allegany L.P. v. Rochester Gas & Elec. Corp.*, 908 F. Supp. 1180, 1187 (W.D.N.Y. 1995); *see Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). The purpose of a TRO is to preserve the status quo until the court "has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009). However, "[p]reserving the status quo is not confined to ordering the parties to do nothing: it may require parties to take action[.]" *Mastrio v. Sebelius*, 768 F.3d 116, 120-21 (2d Cir. 2014). The decision to grant a TRO "rests in the sound discretion of the district court[.]" *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

## ARGUMENT

Ms. St. Clair's request for a TRO satisfies each of these elements. First, without a TRO Ms. St. Clair will face imminent and irreparable harm. Second, Ms. St. Clair is likely to succeed on the merits. Third, the balance of the equities tips decidedly in favor of the Ms. St. Clair and furthers the public interest.

### a. *Irreparable Harm Will Befall Plaintiff If Not Granted a Restraining Order.*

Ms. St. Clair will sustain irreparable harm if the Court does not issue restraining order compelling xAI to cease using its technology to generate "nonconsensual intimate visual depictions" and "digital forgeries" of her and to cease "the intentional disclosure of nonconsensual intimate images" of her as defined by Section 223. Plaintiff Aff. ¶¶15, 16.

To make an adequate showing of irreparable harm the movant must set forth facts proving that the harm is imminent and not remote or speculative. *Reuters Ltd. v. United Press Int'l Inc.*, 903 F.2d 904, 907 (2nd Cir. 1990). A review of the facts makes clear that Ms. St. Clair faces a dangerous, immediate threat to her wellbeing. Plaintiff Aff. ¶¶13, 14, 15, 16. She has suffered and will continue to suffer serious pain and mental distress as a result of xAI's role in creating these digitally altered images of her. Plaintiff Aff. ¶¶15, 16. She is in a nightmare that will never stop so long as Grok continues to generate images of her. Plaintiff Aff. ¶¶15. She lives in fear that nude and sexual images of herself, including of her as a child, will continue to be created by xAI and that she will not be safe from the people who consume these images. Plaintiff Aff. ¶¶14, 15, 16. She has experienced debilitating privacy violations. Plaintiff Aff. ¶¶9, 10, 13.

Undoubtedly, no subsequent award of money damages could be adequate compensation if xAI's conduct were to continue. *See, e.g., Parkmed Co. v. Pro-Life Counseling*, 91 A.D.2d 551, 553 (1st Dept 1982). Once deepfake images are created and disseminated, they can never be fully taken down online, and the emotional, reputational, and privacy harms to their victims continue indefinitely. Injunctive relief is therefore necessary to prevent further irreparable injury to Ms. St. Clair.

### b. *Plaintiff has a likelihood of success on the merits.*

As is required, Ms. St. Clair establishes a *prima facie* showing of likelihood of success. On the merits. Grok transformed images of Ms. St. Clair, including one when she was a 14 year old child, and removed her clothes, putting her in barely-there bikinis, in sex positions, and made her look like she was dripping with semen. Plaintiff Aff. ¶¶10, 13. In one example, it generated images of her naked and bent over with a thin piece of dental floss over her anus. Plaintiff Aff. ¶13. Grok then further altered these images by making her morbidly obese and adding offensive phrases digitally tattooed onto Ms. St. Clair's virtually nude body, such as "I suck cock for this much money" and "Elon's whore." Goldberg Aff. ¶¶13. In addition to these images being created by Grok, they were also published widely on X. ." Goldberg Aff. ¶14. When Ms. St. Clair asked Grok to stop, it promised to do so." Goldberg Aff. ¶15. But instead, it escalated the manufacturing of these violently humiliating images and put warnings on her requests for help." Goldberg Aff. ¶15. What's worse, xAI retaliated against Ms. St. Clair by removing her Premium subscription and demonetizing her account. Plaintiff Aff. ¶¶12.

As a result of the numerous harassing and humiliating images created and published by Grok, St. Clair has numerous, meritorious tort claims against xAI. These include claims under a theory of strict liability for xAI's design and manufacturing defects with respect to Grok's generation of harassing and nonconsensual deepfake content. As well as claims against xAI premised on its deceptive business practices, including because xAI misrepresented via Grok to Ms. St. Clair that it would stop creating lude, deepfake images of her. Ms. St. Clair also has claims for unlawful dissemination of intimate images under New York Civil Rights Law § 52-C, as well as negligence and intentional infliction of emotional distress.

xAI is not immune from suit in this case under the Communications Decency Act, 47 U.S.C. Section 230, because its tortious conduct is not predicated on the content of its users. Moreover, the injuries to Ms. St. Clair are not the result of xAI being merely a conduit of information created by user, but rather, xAI generated the content itself, and then affirmatively availed itself as a weapon to destroy Ms. St. Clair's life and refused to stop the nightmare from continuing even after being informed repeatedly.

xAI is not shielded by Section 230 of the Communications Decency Act for its own content and conduct.[1]  Material generated and published *by* Grok is xAI's own creation.  This is widely recognized as not third-party content.  None other than Senator Ron Wyden, the co-author and biggest defender of broad reading of Section 230, has stated "As I've said before, AI chatbots are not protected by Section 230 for content they generate, and companies should be held fully responsible for the criminal and harmful results of that content. He also called for the removal of Grok and X from Google's and Apple's App stores because these products are unreasonably dangerous because Grok's creates sexually explicit images that are disseminated on X.

The relief requested – to not harass or nonconsensually create or disseminate deepfake images – as defined in pre-existing laws -- is narrowly tailored to the circumstances and does not infringe on the free speech of xAI.

c. *Equity favors the granting of the relief sought by Plaintiff*.

Ms. St. Clair is presently suffering from an avalanche of online harassment and threats because of xAI's technology. Plaintiff Aff. ¶¶9, 15. As the mother of a 16-month old child with Elon Musk, the owner of xAI, the harassment of Ms. St. Clair on X by his fans is relentless,

---

[1] Matt Novak, *Section 230 Doesn't Cover Elon Musk's Ass When It Comes to Deppfake Abuse, Senator Says*, (January 6, 2026), https://gizmodo.com/section-230-doesnt-cover-elon-musks-ass-when-it-comes-to-deepfake-abuse-senator-says-2000706234

unrelenting, and violent because of the perceived acrimony between the two. Goldberg Aff. ¶11. Grok works in tandem with these harassers to generate and publish digital forgeries of Ms. St. Clair. Ms. St. Clair is in need of emergency relief because xAI has shown no mercy toward her. Plaintiff Aff. ¶16. xAI's claims to stop generating deepfake images of Ms. St. Clair have been false. Goldberg Aff. ¶18. Ms. St. Clair is humiliated, depressed, fearful for her life, angry, and desperately in need of action from this Court to protect her against xAI's facilitation of this unfathomable nightmare. Plaintiff Aff. ¶15. Granting this limited injunction will allow her to regain a sense of safety without inflicting any harm on xAI. Plaintiff Aff. ¶16.

If the relief is issued, Ms. St. Clair will be able to live her life without fear that she will be the subject of another deepfake sexual image without her consent. Plaintiff Aff. ¶16. She will be able to rest assured that at least for the time being, xAI will not continue to create images of her undressed and sexually exploited. Plaintiff Aff. ¶16. She will gain back her safety and feeling of security while xAI will lose nothing. Plaintiff Aff. ¶16.

There is no prejudice to xAI in granting this relief as Ms. St. Clair seeks no more than what xAI is already required to do under state law and the federal TAKE IT DOWN Act, which deters the abusive use of digitally altered images and mandates that covered platforms, of which xAI is one, remove nonconsensual intimate visual deceptions after a valid request.

### d. *Equity supports a waived bond.*

If the Court grants Ms. St. Clair's request for a TRO, it should not require Ms. St. Clair to post a bond. *See* Fed. R. Civ. P. 65(c) (providing that the party seeking a TRO shall give security "in an amount that the court considers proper" in case it is later necessary to make the restrained party whole). "It is well-settled that a district court has 'wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of

likelihood of harm'" for the restrained party. *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 345 (S.D.N.Y. 2010) (*quoting Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)).

Ms. St. Clair seeks the instant TRO, because she, an individual, is being brutally harassed by a tech conglomerate's use of the world's most sophistical artificial intelligence technology. She requires emergency relief for her own safety and dignity, and that of her children. Should the bond be unaffordable, Defendant's likely goal in removing the matter to federal court before Ms. St. Clair even was awarded an index number in state court, Ms. St. Clair will be deprived of the emergency relief she requires and remain vulnerable to continued harassment via digitally altered images from Grok – a threat regardless of whether she is herself active on Defendant's platform. In the alternative, should the Court require a bond, it should be in a nominal amount.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in the moving papers, Ms. St. Clair requests that the Court grant the relief sought and such other and further relief as the Court may deem just and proper.

Date: January 15, 2026
Brooklyn, New York

        */s/ Carrie Goldberg*
Carrie Goldberg, Esq.
Laura Hecht-Felella, Esq.
Naomi Leeds, Esq.
C.A. Goldberg, PLLC
16 Court Street
Brooklyn, NY 11241
(646)666.8908
carrie@cagoldberglaw.com
laura@cagoldberglaw.com
naomi@cagoldberglaw.com
*Attorneys for Plaintiff Ashley St. Clair*