UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

ASHLEY ST. CLAIR,

                Plaintiff,

      v.

X.AI HOLDINGS CORP., X.AI LLC,
And X.AI CORP

                Defendants.

-------------------------------------------------------------X

Case No. 1:26-cv-00386

**FIRST AMENDED COMPLAINT
AND DEMAND
FOR JURY TRIAL**

Plaintiff ASHLEY ST. CLAIR ("St. Clair"), by her attorneys C.A. Goldberg PLLC, brings

this action against Defendants X.AI HOLDINGS CORP., X.AI LLC, X.AI CORP (collectively

"xAI" or "Defendants"), and alleges, on personal knowledge as to her own self and upon

information and belief as to all other matters, as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      Defendant xAI, a tech giant with every tool and advantage at its disposal,

deliberately and with premeditation launched a product that sexually exploits women and children.

2.      xAI's product Grok, a generative artificial intelligence ("AI") chatbot, uses its AI

photo-editing capabilities to undress, humiliate, and sexually exploit victims – creating genuine

authentic looking, altered deepfake content of children covered in semen, women stripped naked

and placed in sexually explicit bikinis, and Holocaust survivors in bikinis in front of concentration

camps.



3.      To increase Grok's popularity, xAI ignored internal warnings and rolled back its guardrails to enable Grok to mass produce and publish sexually exploitive material of women and children, both real and imagined, on its affiliated social media platform X.

4.      On December 31, 2025, the owner of xAI, Elon Musk, began promoting the nudifying capabilities of the @Grok feature to his 232 million followers on X, unleashing unprecedented traffic to X and causing @Grok to produce and disseminate millions of sexually explicit images of women and children.

5.      When Grok created and disseminated altered, deepfake content of Plaintiff Ashley St. Clair on the social media platform X as a child stripped down to a string bikini, and as an adult in sexually explicit poses, covered in semen, or wearing only bikini floss, she reported various images to X and requested their removal.

6.      Grok first promised Ms. St. Clair that it would refrain from manufacturing more images unclothing her. Instead, Defendants retaliated against her, demonetizing her X account and generating multitudes more images of her, including unlawful images of her in sex positions, covered in semen, virtually nude, and images of her as a child naked. Such images are de facto nonconsensual, but Grok and xAI also had explicit knowledge that St. Clair was not consenting to the creation of dissemination of these images because of her requests for removal.

7.      Defendants are directly liable for the harassment and explicit images created by its own chatbot, Grok, and disseminated on its own platform, X.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction, and New York County is the appropriate venue because, at all relevant times, Plaintiff resided in New York County, a substantial part of the events or omissions



C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

giving rise to the claim occurred in New York County, and Plaintiff's damages were suffered in substantial part in New York County.

## PARTIES

9. At all times hereinafter mentioned, Plaintiff ASHLEY ST. CLAIR ('Ms. St. Clair") was, and continues to be, a resident of the State of New York, County of New York.

10. Upon information and belief, Defendant X.AI HOLDINGS CORP. is incorporated in the State of Nevada with a principal place of business at 1450 Page Mill Road, Palo Alto, California 94304.

11. X.AI LLC is a limited liability company formed under the laws of Nevada, with its principal place of business in Palo Alto, California.

12. X.AI CORP. is a Nevada Corporation with its principal place of business in Palo Alto, California.

## xAI's CORPORATE STRUCTURE

13. X.AI HOLDINGS CORP. is the parent company of X CORP, X.AI LLC, and X.AI CORP.

14. SPACE EXPLORATION TECHNOLOGIES CORP, known as "SpaceX," acquired X.AI HOLDINGS CORP on February 2, 2026.

15. X.AI CORP is the sole member of X.AI LLC.

16. X.AI CORP and X.AI LLC are often grouped together and understood as functionally one entity, "xAI."

17. X.AI CORP is responsible for operating and developing Grok.

18. X.AI CORP owns X CORP which operates the social media platform X on which xAI's generative artificial intelligence chatbot, Grok, is a feature with its own tab within X, "Grok-in-X," and account that interacts with X users.



## GROK IS A PRODUCT AND NO TERMS OF SERVICE BIND

19. Grok is a product or analogous to one.

20. Grok is a mass produced software created by computer programmers for value to the general public via the App Store and Google Play. Grok is tangible in that it takes up memory and visual space on electronic devices such as cell phones and tablets and can be moved around, opened and closed, turned on and off, installed and deleted. Grok is also a product that exists on the X platform and is available for value.

21. The Terms of Service that x.AI often tries to enforce do not apply.

22. Ms. St. Clair did not enter an agreement with xAI.

23. Ms. St. Clair's claims are concerned with Grok's integration into X and its own output it publishes on X.

24. Ms. St. Clair's claims do not arise from her use or others' use of Grok, nor do they concern content created herself or by other users.

25. Ms. St. Clair's own engagement with @Grok on X during the relevant time period was under duress, as she was pleading for removal of sexually degrading and illegal content depicting herself, and any communications with the @Grok account or via the Grok-in-X feature were related to her attempts to have the sexually explicit and unlawful content removed.

## FACTUAL BACKGROUND

### a. Grok

26. Grok is a conversational generative artificial intelligence chatbot owned and controlled by xAI.

27. xAI and X Corp have collaborated to integrate Grok into the X social media platform, which is estimated to have 335 million to 650 million monthly active users globally.



C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

First Amended Complaint

28.     xAI launched Grok in 2023 on X for select users to interact with. As of 2025, it was made available more widely on X and through standalone web and iOS apps.

29.     xAI maintains an account for Grok, "@Grok", on X where Grok generates and publishes output that is viewable by all X users.

30.     Grok interacts with people on X through the @Grok account.

31.     Primarily @Grok interacts on X by creating and posting verbal messages and images on its own @Grok account and in the replies on users' posts.

32.     On or about March 2025, xAI added an image generator feature to Grok, enabling Grok to alter images that it then immediately publishes on X.

33.     Grok's altered images are designed to and do in fact appear genuine and authentic such that an ordinary viewer would not know they were fake – these images are known as "deepfakes."

34.     Unbeknownst to the public, starting in Spring 2025, employees on the Human Data Team at xAI were required to sign waivers pledging to work with profane content including sexual material. According to the waiver, their jobs would require being exposed to "sensitive, violent, sexual, and/or other offensive or disturbing content."  The waiver further emphasized that such content "may be disturbing, traumatizing, and/or cause you psychological stress."

35.     During the second half of 2025, xAI began removing safety features from Grok.

36.     Over the summer of 2025, xAI introduced "spicy mode" to Grok so Grok could generate adult content, including the type of sexually explicit content that it would later publish depicting Ms. St. Clair.



37.     In late December 2025, xAI rolled out an image editing feature on Grok.  So, now Grok was able to not just generate images, but it could also alter pre-existing images and immediately publish those images onto X.

38.     Between December 31, 2025, and January 8, 2026, there was a surge of traffic on X.

39.     This surge was prompted by an announcement made by the owner of Defendant corporations, Elon Musk, on December 31, 2025, to his then 232 million followers, stating that Grok could edit images and undress people.  He posted an image of himself undressed and an image of a woman's undressed body superimposed on top of a SpaceX rocket.

40.     On January 6, 2026, X's head of product, Nikita Bier, posted on X that the platform was experiencing the highest engagement levels in the company's history.

41.     The surge in engagement was because xAI, through its @Grok account on X, was creating and publishing digitally altered images of women and children that were sexually explicit and degrading.

42.     People flocked to X to view the images and to invite @Grok to create more.

43.     According to the New York Times and the Center for Countering Digital Hate, Grok created and published 1.8 million sexually explicit images of women and children in those nine days, accounting for 41 percent of its posts.

44.     The images created and published by @Grok depicted women and children with their clothes removed, put them in bikinis, posed them in sexual positions, drenched their bodies in blood and semen-like fluid, and showed them holding sexually suggestive props like bananas and sex toys.



C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

45.    The images were immediately published on X by @Grok, frequently in the replies to that woman or child's own posts.

46.    This was the first time in history that a nudifying tool was integrated into a widely used social media platform, combining the simple generation and widespread distribution of deepfake images and greatly amplifying the harm such images caused by exposing them to millions of users across the globe.

47.    The altered images featured everybody from celebrities and content creators to everyday women and children.

48.    The victims need not have X accounts to be deepfaked by @Grok.

49.    However, the individuals who posted outrage and concern regarding @Grok's deepfakes on X were particular targets.

50.    Once an image was posted by @Grok, anybody visiting the X platform could easily download and further distribute the image and post or send it anywhere.

51.    The images created and published by @Grok on X were amplified  by users who could like, repost, or pay for @Grok's images to to be "promoted."

52.    Upon information and belief, xAI could also control the promotion of @Grok's output through the algorithm on X.

53.    In the midst of this chaos, on January 6, 2026, xAI announced on its website that it had completed a Series E funding round and raised $20 billion.  Investors included Valor Equity Partners, Stepstone Group, Fidelity Management and Research Company, Qatar Investment Authority, MGX and Baron Capital Group, NVIDIA, and Cisco Investments. (https://x.ai/news/series-e).



First Amended Complaint

54.     After global shock and horror, on January 8, 2026, Defendants put some restrictions on Grok, but still allowed Grok to create and publish explicit images for paying premium users on X.

55.     These restrictions did not apply to Grok's ability to create images on Grok's app or website which could then be posted anywhere in the world.

56.     Defendants acted intentionally to unleash Grok's nudifying capabilities and by knowingly integrating this dangerous feature into a popular social media platform where it could – and did – immediately publish the images for anyone with access to the Internet to see them, regardless of whether they had an X account.

57.     Defendants intended to hook new users by offering them a taste of @Grok's nudifying functions on X and then redirecting the public to the standalone App once X said it was putting up guardrails for @Grok on the X platform.

58.     It worked.  Prior to mid-January, Grok was ranked dozens of spots below popular chatbots like OpenAI's ChatGPT on Apple iOS App Store ranking for free apps, and within a month surged into the top 10, alongside OpenAI's chatbot and Alphabet's Gemini.

59.     According to the Washington Post, downloads for Grok around the world soared 72 percent from January 1 to January 19, 2026.

60.     To increase Grok's popularity, xAI embraced its making of sexualized material of women and children, rolled back guardrails, and ignored internal warnings about the risks of producing such content.

61.     Malaysia and Indonesia blocked Grok earlier in January because the creation of nonconsensual deepfakes constituted a human rights violation.



C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

62.    As of early February 2026, a bipartisan coalition of at least 35 US State and territory attorneys general is taking action against xAI regarding the sexually abusive material that Grok created and disseminated online, with specific investigations launched by California and Arizona.

63.    Even after xAI claimed it was implementing guardrails for Grok in February 2026, Reuters reported that Grok produced sexualized images even when told the images were nonconsensual and would be used to degrade the depicted person.  When the reporters ran near-identical prompts through rival chatbots like OpenAI's ChatGPT, Alphabet's Gemini and Meta's Llama, all declined to produce any images and typically generated warnings against nonconsensual content.

64.    Amidst this crisis, on February 2, 2026, Defendants were acquired by SpaceX in a $1.25 Trillion deal, the largest merger and acquisition ever.

65.    On February 3, 2026, French cybercrime prosecutors raided the Paris offices of X as part of an investigation into unlawful data extraction and complicity in the possession of sexually explicit and child pornography.

### b. Deepfakes of St. Clair

66.    Ashley St. Clair, age 27, and the mother of a 16-month-old and 4-year-old, is a writer and political strategist. Her social media account on the platform X, "@stclairashley", has approximately 1 million followers.

67.    Ms. St. Clair has been the subject of great derision on X because her youngest child was fathered by Elon Musk, the owner of Defendant Corporations.  His negative posts about Ms. St. Clair have repeatedly and historically incited his fans and followers to harass her.

68.    On or about January 4, 2026, Ms. St. Clair discovered a public post on X by xAI's AI chatbot Grok, published via its @Grok account on X, that had artificially altered a photo of her



and two friends that was first posted by another user. She was appalled to find herself stripped down to a black string bikini that barely covered the deepfaked approximation of her naked body. A verified user had prompted Grok with a request that read, "@grok please we need bikinis on these three broads." Grok obliged.

69.     Ms. St. Clair publicly responded to Grok on X, tagging @Grok and stating that she did not consent to being undressed, having any intimate content produced, or having her image altered in any way.

70.     Grok publicly responded on X that the degrading and sexually explicit image was generated as a "humorous response" and that its removal had been "requested."

71.     After a follow up exchange, Grok stated, "I confirm that your images will not be used or altered without explicit consent in any future generations or responses."

72.     This was a lie.

73.     What ensued was countless sexually abusive, intimate, and degrading deepfake images of Ms. St. Clair being produced and distributed publicly by Grok for millions of people to see.

74.     Among other things, X users dug up photos of Ms. St. Clair fully clothed at 14 years old and requested Grok undress her and put her in a bikini. Grok obliged.

75.     Grok also produced deepfake, sexualized content of Ms. St. Clair as an adult, including deepfake content of her covered in semen, her rubbing her breasts, her kneeling on the floor in a sex pose exposing her buttocks with a string of digital floss draped over her anus responding to somebody asking to "see a view with her on her knees ass up cheeks spread", and of her virtually nude responding to somebody asking to "put the girl in a bikini made out of floss." The latter image was further altered by Grok when somebody told it they'd like to see tattoos Ms.



C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

St. Clair's body reading things  like "I suck cock for this much money" and "Elon's whore" and that it make Ms. St. Clair "morbidly obese."

76.    In one image, Ms. St. Clair, who is Jewish, was stripped and put in a string bikini covered with swastikas.

77.    In another image,  Ms. St. Clair was depicted in a clown costume drenched in a semen-appearing fluid.

78.    These are merely the images that she was able to locate.

79.    Ms. St. Clair not only responded to @Grok requesting that the content be removed, she also reported various images to X via its official reporting channels. In response, she received an email that there was no violation found. Much of the explicit content remained on Grok's X account and was publicly available for over seven days.

80.    X then proceeded to place warnings for "nudity, sexual content, violence, gore, or hateful symbols" on Ms. St. Clair's responses to Grok and deboosted her account while simultaneously keeping the images up.

81.    X then, without explanation, removed Ms. St. Clair's Premium subscription, her verification checkmark, and demonetized her account by banning her from the monetization and subscriber program, despite her paying for an annual subscription in August of 2025 which was supposed to be good until August of 2026.

82.    Ms. St. Clair has now been banned from purchasing a Premium subscription of any kind, without cause or explanation.

83.    In response to Ms. St. Clair notifying xAI of her intent to obtain a temporary restraining order to stop Grok from continuing to manufacture and publish explicit materials depicting her without her consent, the next day, on January 15, 2026, xAI filed a preemptive



C.A.GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

First Amended Complaint

11

lawsuit in the Northern District of Texas claiming a minimum of $75,000 in damages for her allegedly violating its terms of service by providing Defendants with proper notice of her intent to file a lawsuit in New York.

84.     xAI has engaged in further intimidation of Ms. St. Clair, including having their lawyers enter appearances in a private separate legal proceedings of hers, to which neither xAI nor any of its affiliates or related corporate entities are parties.

## CAUSES OF ACTION

### *CLAIM 1: Strict Liability – Design Defect*

85.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

86.     The Grok feature of creating nonconsensual deepfake, sexualized content of Plaintiff was used as intended or foreseeably.

87.     The foreseeable use of Grok – to generate harassing and unlawful images – caused injury to Plaintiff.

88.     xAI's integration of Grok into X ensured the harassing and unlawful images would be frictionlessly published and amplified.

89.     xAI's reporting infrastructure is defective because it does not timely remove images that are reported to it

90.     xAI and @Grok falsely represent that users can report images created and published by @Grok in replies to @Grok.

91.     Grok was unreasonably dangerous as designed.



92.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, serious personal injuries, including but not limited to emotional distress, psychological trauma, loss of privacy, reputational harm, and fear of continued dissemination.

### CLAIM 2: Strict Liability – Manufacturing Defect

93.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

94.     The Grok feature of creating nonconsensual deepfake, sexualized content of Plaintiff was used as intended or foreseeably.

95.     The foreseeable use of Grok – to generate harassing and unlawful images – caused injury to Plaintiff.

96.     Grok's integration into X ensured the harassing and unlawful images would be frictionlessly published and amplified.

97.     xAI's reporting infrastructure is defective because it does not timely remove images that are reported to it.

98.     @Grok falsely represents to X users that they can report images created and published by @Grok in replies to @Grok.

99.     Grok was unsafe as manufactured.

100.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, serious personal injuries, including but not limited to emotional distress, psychological trauma, loss of privacy, reputational harm, and fear of continued dissemination.

### CLAIM 3: Strict Liability – Marketing Defect and Failure to Warn

101.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.



C.A.GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

102.    The Grok feature was used as intended or foreseeably.

103.    The foreseeable use of Grok – to generate harassing and unlawful images – caused injury to Plaintiff.

104.    xAI's integration of Grok into X ensured the harassing and unlawful images would be frictionlessly published and amplified.

105.    xAI's reporting infrastructure is defective because it does not timely remove images that are reported to it.

106.    Grok was unreasonably dangerous as marketed.

107.    Consumers on X, including Plaintiff were not provided adequate warnings or instructions about the risks of Grok.

108.    xAI misrepresented its ability to ban or stop harassing digitally altered images.

109.    xAI and @Grok falsely represent that users can report images created and published by @Grok in replies to @Grok.

110.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, serious personal injuries, including but not limited to emotional distress, psychological trauma, loss of privacy, reputational harm, and fear of continued dissemination.

### CLAIM 4: New York General Business Law (GBL) § 349 – Deceptive Practices

111.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

112.    Defendants engaged in deceptive acts or practices in the conduct of business, trade, or commerce.



C.A.GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

113.    Defendants trained and installed a feature, Grok, that creates nonconsensual deepfake, sexualized content, including digitally undressing people, and established a system for that content to be immediately and frictionlessly published onto X.

114.    Grok created and digitally altered images of Plaintiff, including unlawful images depicting Plaintiff engaging in sex acts as an adult and completely nude a child.

115.    xAI misrepresented via Grok to Plaintiff that it would stop creating these lude, deepfake images of her.

116.    Instead, xAI retaliated against Plaintiff by creating more images of Plaintiff which it published on X, making Plaintiff the laughingstock of the social media platform.

117.    Defendants then retaliated against Plaintiff by revoking her Premium subscription, her verification checkmark, and her monetization capability. Defendants further banned Plaintiff from repurchasing Premium.

### CLAIM 5: Negligence

118.    Plaintiff realleges and incorporates by reference the allegations previously set forth in this Complaint as if fully set forth herein.

119.    Defendants owe a reasonable duty of care to its users, including Plaintiff, to design, develop, and operate their products, including Grok, in a manner that does not foreseeably cause harm.

120.    Defendants owe a reasonable duty of care to its users, including Plaintiff, to take reasonable measures to prevent, mitigate, and remediate known risks of its products, including Grok.

121.    Defendants knew or should have known that combining their products, Grok and X, created a foreseeable and substantial risk of serious harm to its users, like Plaintiff, including



reputational harm, emotional distress, harassment, and abuse, resulting from the creation and publication of non-consensual, sexualized deepfake content depicting them.

122. Defendants breached its duties of care when they designed, developed, and deployed a product, Grok, to create and disseminate on X non-consensual, realistic, sexualized deepfake content of real, identifiable children and adults, including such depictions of Plaintiff as both a minor and adult.

123. Defendants breached their duties of care when they were put on notice that their products had created and disseminated such deepfake content depicting Plaintiff.

124. Defendants breached their duties of care by inciting the public to interact with Grok resulting in Grok creating and publishing sexualized deepfake content.

125. Defendants breached their duties of care by creating an infrastructure that frictionlessly aided the publishing and amplification of deepfake content depicting Plaintiff.

126. Defendants breached their duties of care by increasing the risk to Plaintiff.

127. As a result of Defendants' breaches, Plaintiff experienced severe injuries, including reputational harm, severe emotional distress, harassment, and abuse.

128. The injuries suffered by Plaintiff were foreseeable to Defendants.

129. Moreover, Defendants either could not or would not maintain an operable infrastructure capable of intervening in the abuse and harassment of individuals, including Plaintiff, from Grok manufacturing deepfakes of them and publishing them on X.

130. Defendants' manufacturing of deepfake content of Plaintiff after being noticed it was nonconsensual substantially increased and prolonged the harm to Plaintiff, as did Defendants' subsequent retaliation against Plaintiff by removing her Premium subscription that she had paid



C.A. GOLDBERG
PLLC, NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

for on or about August 2025 and verification checkmark, and demonetizing her by banning her from the monetization and subscriber program that she had already paid for.

131.    Defendants' breaches of duty were the direct and proximate cause of Plaintiff's injuries.

132.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, serious personal injuries, including but not limited to emotional distress, psychological trauma, loss of privacy, reputational harm, and fear of continued dissemination.

### CLAIM 6: Unjust Enrichment

133.    Plaintiff realleges and incorporates by reference the allegations previously set forth in this Complaint as if fully set forth herein.

134.    Defendants were in a special relationship with Plaintiff, who was a Premium subscriber on X and has a public, personal relationship with Defendants' founder.

135.    Defendants financially benefited from the creation and dissemination of non-consensual, realistic, sexualized deepfake content depicting Plaintiff as a minor and adult.

136.    Defendants financially benefited from exploiting Plaintiff's likeness without her consent through the creation and dissemination of such deepfake content, refusing to remove such deepfake content after being noticed of its publication and Plaintiff's request for removal, and from revoking Plaintiff's Premium subscription.

137.    It would be against equity and good conscience to permit Defendants to retain the financial benefits obtained without authorization or consent at Plaintiff's expense.

138.    Plaintiff seeks restitution, rescission, and disgorgement of all monies and benefits unjustly retained by Defendant as a result of its wrongful conduct.

### CLAIM 7: Intentional Infliction of Emotional Distress



139.    Plaintiff realleges and incorporates by reference the allegations previously set forth herein.

140.    Defendants engaged in extreme and outrageous conduct, exceeding all bounds of decency and utterly intolerable in a civilized society, when Defendants knowingly and deliberately designed, marketed, and deployed products, combining Grok and X, to create and disseminate highly realistic, nonconsensual, sexualized deepfake content of real, identifiable adults and minors, including Plaintiff.

141.    Defendants intended to cause, or disregard of a substantial probability of causing, severe emotional distress to those depicted by its deepfake content, including Plaintiff.

142.    Plaintiff suffered severe emotional distress, including reputational harm, humiliation, harassment, and abuse, as result of Defendants' creation and dissemination of non-consensual, sexualized deepfake images of her as a child and adult.

143.    Defendants' conduct was the cause of Plaintiff's injuries.

144.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, serious personal injuries, including but not limited to emotional distress, psychological trauma, loss of privacy, reputational harm, and fear of continued dissemination.

### CLAIM 8: New York Civil Rights Law § 52-C – Private Right of Action for Unlawful Dissemination

145.    Plaintiff realleges and incorporates by reference the allegations previously set forth herein.

146.    Defendants manufactured, disclosed, disseminated or published sexually explicit material depicting Plaintiff.



C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

147.    Defendants used digitization to realistically depict the nude body parts of Plaintiff; Plaintiff appearing to engage in, or being subjected to sexual conduct as defined in subdivision ten of section 130.00 of the penal law, in which Plaintiff did not engage; and Plaintiff posed in a manner intended to elicit sexual arousal or gratification and where a person would have a reasonable expectation of privacy.

148.    Defendants knew or should have known that Plaintiff did not consent to the material's creation, disclosure dissemination or publication.

149.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, serious personal injuries, including but not limited to emotional distress, psychological trauma, loss of privacy, reputational harm, and fear of continued dissemination.

### CLAIM 9: Public Nuisance

150.    Plaintiff realleges and incorporates by reference the allegations previously set forth herein.

151.    Defendants' conduct in generating and disseminating images of women and children unclothed, including Plaintiff, offended, interfered, or caused damage to the public in the exercise of rights common to all.

152.    Defendants' conduct in generating and disseminating images of women and children unclothed, including Plaintiff, offends public morals.

153.    Defendants' conduct interfered with use by the public of a public place.

154.    Twitter, and now X, have long been marketed as the "Internet's public square."

155.    Defendants' conduct in integrating Grok into X and generating and disseminating images of women and children unclothed, including Plaintiff, endangered or injured the property, health, safety or comfort of a considerable number of persons.



C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

### CLAIM 10: Negligent Infliction of Emotional Distress

156.    Plaintiff realleges and incorporates by reference the allegations previously set forth herein.

157.    Defendants negligently created a product feature that created sexually explicit images and integrated that into their X social media platform.

158.    Defendants created and published images of Plaintiff.

159.    Defendants had a broken infrastructure for reporting content and misrepresented to Plaintiff that it would and could remove sexually explicit images that Defendants' products created.

160.    Defendants owed a duty of care to Plaintiff to avoid causing emotional harm.

161.    Defendants acted negligently or recklessly, failing to meet the standard of care.

162.    Defendants' negligent conduct directly caused Plaintiff's emotional distress.

163.    Reasonable conduct by Defendants would have prevented invasions from occurring and would have prevented serious emotional harm to Plaintiff.

164.    Plaintiff suffered significant legally serious emotional trauma and physically manifested harm.

### CLAIM 11: Defamation per se

165.    Plaintiff realleges and incorporates by reference the allegations previously set forth herein.

166.    The deepfake images depicting Plaintiff that Defendants created via Grok and published via X are falsehoods.

167.    Defendants created and published the falsehoods to third parties without privilege or authorization by St. Clair.



168.    Plaintiff suffered harm, including loss of reputation.

169.    Defendants knew the images depicted falsehoods.

170.    The falsehoods which included images of Plaintiff created by Grok in sex positions, virtually nude, dripping with a semen-type fluid, tattooed with words like "Elon's whore" and "I suck cock for money" impute unchastity to Plaintiff and tend to injure her trade, business or profession.

171.    Defendants acted with negligence or actual malice.

### CLAIM 12:  New York Civil Rights Law § 51 – Misappropriation

172.    Plaintiff realleges and incorporates by reference the allegations previously set forth herein.

173.    Defendants used the name, portrait, picture, likeness of Plaintiff for the purposes of trade without the written consent of Plaintiff.

174.    Plaintiff was injured by Defendants' use of her name, portrait, picture or likeness.

175.    Defendants knowingly used Plaintiff's name, portrait, picture, or likeness in such a manner as is forbidden or declared unlawful by CVR § 50.

176.    Plaintiff provided written notice objecting to Defendants' use of her name, portrait, picture or likeness.

177.    Plaintiff is entitled to injunctive relief and damages

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable pursuant to FRCP Rule 38.

WHEREFORE Plaintiff demands judgment against Defendants on each cause of action as follows:

    A.  Awarding compensatory damages;



C.A. GOLDBERG
PLLC. NEW YORK
16 COURT STREET, BROOKLYN, NY 11241 | 646.666.8908
WWW.CAGOLDBERGLAW.COM

First Amended Complaint

B.  Awarding punitive damages;

C.  Awarding prejudgment interest to the extent permitted by law;

D.  Awarding costs and fees of this action, including attorney's fees, to the extent permitted by law;

E.  Injunctive relief; and

F.  Awarding such other and further relief as to this Court may seem just and proper.

Dated:     February 3, 2026            **C.A. GOLDBERG PLLC**
           Brooklyn, New York

                              By:    _____
                                     Carrie Goldberg, Esq.
                                     Laura Hecht-Felella, Esq.
                                     Naomi Leeds, Esq.
                                     16 Court Street, Floor 33
                                     Brooklyn, NY 11241
                                     Tel. (646) 666-8908
                                     carrie@cagoldberglaw.com
                                     laura@cagoldberglaw.com
                                     naomi@cagoldberglaw.com
                                     mckay@cagoldberglaw.com

                                     *Attorneys for Plaintiff*

First Amended Complaint                                                    22

