UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ASHLEY ST. CLAIR,

*Plaintiff*,

v.

X.AI HOLDINGS CORP., ET AL.

*Defendants.*

Case 1:26-cv-00386

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER OPPOSITION TO DEFENDANTS' ORDER TO SHOW CAUSE TO TRANSFER VENUE UNDER 28 U.S.C. § 1404**

Plaintiff Ashley St. Clair respectfully submits this supplemental opposition to Defendants' motion to transfer venue to the Northern District of Texas. Plaintiff incorporates by reference the arguments in previous briefing.

## INTRODUCTION

Defendants (collectively "xAI") ask this Court to transfer a New York resident's case involving ongoing, AI-generated sexual abuse on the basis of a forum-selection clause inside xAI's Terms of Service ("TOS"). However, Defendants' evidence does not, and cannot, show that Plaintiff herself assented to those TOS. This is because Plaintiff's xAI account was created by xAI employees at the direction of xAI's founder and CEO, Elon Musk. Accordingly, Plaintiff was never on notice of, nor did she have the opportunity to review and assent to, the TOS.

Moreover, the plain text of the forum-selection clause cited by Defendants forecloses its enforcement because it only reaches disputes arising from "your or others'" use or content. At issue here is Defendants' *own* conduct in manufacturing and deploying a dangerous product, the AI chatbot Grok ("Grok"), that directly caused Plaintiff's injuries. To enforce the forum-selection clause to cover these claims would stretch it far beyond its plain and unambiguous language.

Defendants also cannot rescue their motion by appealing instead to X's TOS after making clear that Grok belongs to xAI and is independent of X. Further, X is not a party to this lawsuit.

Finally, regardless of whether the forum-selection clause is presumptively enforceable, Plaintiff can readily rebut that presumption by showing the absolute absurdity and injustice of enforcing a term contained in a product's TOS against her on the sole basis of her attempts to remedy the harms caused by that very product.

The case should stay in New York where Defendants injured Plaintiff and she resides.

## ARGUMENT

New York courts conduct a four-part inquiry before enforcing forum-selection clauses contained in web-based terms of service: (1) was the clause "reasonably communicated to the party resisting enforcement"; (2) was the clause "mandatory" instead of "permissive"; (3) are "the claims and parties involved in the suit...subject to the forum-selection clause"; and (4) even if the answer to each of the following is yes, can the party resisting enforcement make "a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was valid for such reasons as fraud or overreaching." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014). At any step of this inquiry, the enforcement of a forum-selection clause may be defeated. *Id.* Here, Defendants fail to make the required showings, and Plaintiff can defeat enforcement of the forum-selection clause by readily showing that enforcing it would unreasonable and unjust.

### I. PLAINTIFF NEVER AGREED TO LITIGATE IN TEXAS.

Defendants fail to produce evidence that Plaintiff formed a binding contract with xAI or assented to its TOS such that she would be obligated to litigate this case in Texas. As Plaintiff shows below and in the attached exhibits, she did not, and even Defendants' own evidence only further proves as much.

#### *a. Plaintiff Did Not Create the xAI Account Cited by Defendants.*

Defendants cite the existence of an xAI account in Plaintiff's name as proof that she was presented with, and assented to, its TOS. However, she did not create this account. xAI's owner, Elon Musk, with whom Plaintiff had an intimate relationship, signed her up himself. (*See* February 5, 2026, Affirmation of Ashley St. Clair in Further Opposition to Defendant's Motion to Transfer Venues "Feb 5 St. Clair Aff" ¶ 8.)

First, on November 6, 2023, Musk direct messaged Plaintiff on X and asked her to "send me your login email and I will enable Grok." (*See* Feb 5 St. Clair Aff ¶ 16, St Clair Ex. 2.) Twelve minutes later, Plaintiff received an email with subject line "Welcome to xAI Early Access." (*See* Feb 5 St. Clair Aff ¶ 18, St. Clair Ex. 4). At no point was she presented with xAI's TOS. (*See* Feb 5 St. Clair Aff ¶ 19.) Accordingly, the mere existence of this account cannot show that a contract was formed between Plaintiff and xAI.

Defendants claim Plaintiff signed up for an xAI account on December 10, 2024, but Musk was also responsible for that change. In December 2024, Musk told Plaintiff he had "asked 'some engineers' who worked for him" to "add" her to beta test a standalone app ("GrokApp"). (*See* Feb 5 St. Clair Aff ¶ 9.) At that time, GrokApp was not publicly available and could only be accessed through TestFlight, an Apple product used for testing products still in development and not yet public. (*See* Feb 5 St. Clair Aff ¶ 12.) On December 9, 2024, Plaintiff received an email from TestFlight stating: "X.AI Corp has invited you to test GrokApp." (*See* Feb 5 St. Clair Aff ¶ 11, St. Clair Ex.1.) At no point did Plaintiff "sign up," have the opportunity to review, or agree to any TOS in connection with GrokApp. (*See* Feb 5 St. Clair Aff ¶ 13.) Instead, on December 10, 2024, when Defendants falsely claim she signed up for Grok, she was merely beta testing GrokApp via TestFlight. (*See* Feb 5 St. Clair Aff ¶ 14)

Plaintiff cannot be bound to contractual terms of which she was given no notice or given the opportunity to review. Nor can she be bound to contractual terms that she never accepted or had the opportunity to reject. On these facts alone, Plaintiff cannot be bound to the forum-selection clause Defendants seek to enforce.

The analysis should stop here and Defendants' motion to transfer should be denied.

***b. Defendants' Own Evidence Shows Plaintiff Never Received Inquiry Notice or Assented to xAI's TOS.***

New York courts require clear, affirmative evidence that users assented to web-based terms of service before enforcing forum-selection clauses in those terms against them. *See Castro v. Jem Leasing, LLC*, 214 A.D.3d 475, 476–77 (N.Y. App. Div. 2023) (Uber "failed to sustain its burden of showing that the parties had an explicit and unequivocal agreement," despite showing that Plaintiff created an account and producing the TOS in effect at that time, because Uber did not show "that the Uber app constituted a valid clickwrap agreement putting plaintiff on inquiry notice of contract terms...[or] establish that plaintiff assented to any such agreement"); *see also Wu v. Uber Technologies, Inc.*, 43 N.Y.3d 288, 302–03 (N.Y. App. Div. 2024) ("[The] formation of a web-based contract requires a manifestation of mutual assent sufficiently definite to assure the parties truly are in agreement with respect to all material terms," based on "whether the offeree of a web-based contract was put on inquiry notice of the contractual terms" and "objective manifestations of the intent of the parties [in] their expressed words and deeds.").

Here, Defendants' evidence does not show that (a) xAI put Plaintiff on actual or inquiry notice of its TOS or that (b) Plaintiff manifested objective assent to such terms by words or conduct (e.g., by clicking through xAI's TOS, checking a box manifesting her assent to such TOS, or reviewing a screen that clearly and prominently states she would be manifesting her assent by performing some action and then she performed that action).

In fact, Defendants' own internal records show that Plaintiff never accepted its TOS:

```
    "tos_accepted_version": 0,
    "tos_accepted_last_timestamp": null,
```

Dkt. 33-1. This alone should be conclusive. In the digital context, where data is automatically collected and indexed, the absence of data *is* evidence. Defendants ask this Court to ignore the

clear import of the data in front of it, but the conclusion is inescapable: Plaintiff never accepted any version of xAI's TOS (i.e., version "0"), at any point in time (i.e., timestamp "null").

Defendants' additional data only underscores the sheer lack of evidence showing Plaintiff was put on inquiry notice of xAI's TOS or that she assented thereto. Take the following:


```
    "create_time": "2024-12-10T19:08:19.178802Z",
    "email": null,
    "password": null,
```


Dkt. 33-1 (showing the account in Plaintiff's name was created without an email address or password for log-in). Together with this:


```
    "apple_user_id": null,
    "email_confirmed": false,
    "tos_accepted_version": 0,
    "tos_accepted_last_timestamp": null,
    "blocked_reason": null,
    "delete_time": null,
    "session_tier_id": "3",
    "birth_date": null,
    "email_domain": null,
    "grok_db": "legacy",
    "vercel_avatar_url": null,
    "vercel_email": null,
    "vercel_id": null,
    "vercel_name": null,
    "vercel_role": null,
    "google_email": null,
    "google_user_id": null,
    "pw_email": null,
    "pw_normalized_email": null,
    "signed_in_with_google": false,
    "email_subscribed": false,
    "workos_user_id": null,
    "migrated_from_x": false,
    "x_migration_status": null,
    "microsoft_user_id": null,
    "organization_id": null,
    "organization_role": null,
    "risk_level": null,
    "organization_rbac_role_id": null
```


Dkt. 33-1 (showing the account in Plaintiff's name was created without any third-party log-in information (e.g., via Apple, Google, Microsoft, Vercel, Workos); email verification to confirm Plaintiff created this account; or evidence that Plaintiff migrated her account from X). Based on this data, it is not clear Plaintiff could even log into this account if she wanted to. Accordingly,

Defendants' attempt to frame the mere existence of an xAI account in Plaintiff's name as conclusive proof of her having been on notice of and assenting to its TOS simply by alluding to whatever process other users at the time would have followed—without adducing any actual evidence on this point—is unavailing. Unlike other users, Plaintiff did not create her xAI account and Defendants' data further supports this.

Defendants cannot force Plaintiff to litigate in Texas when its own data show she was never on actual or inquiry notice of xAI's TOS, nor did she assent to them.

## II. xAI's FORUM-SELECTION CLAUSE DOES NOT APPLY TO PLAINTIFF'S CLAIMS.

Even assuming, *arguendo*, that xAI's TOS were enforceable against Plaintiff, the plain language of the forum-selection clause only reaches disputes arising from user-generated content. Plaintiff's claims, by contrast, arise from sexually explicit deepfakes generated and disseminated by Grok for the world to see. This content belongs not to X users, but Grok itself and, by extension, Defendants.

Consider the language in xAI's forum-selection clause:

> The laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us…all disputes ***related to these Terms, the Service, or any patents*** – including without limitation disputes ***related to or arising from any Content (whether your or others' Content)***, or ***your or others' use of the Service*** or the complete or partial termination thereof – shall be brought and must proceed exclusively in the federal U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States[.]

*See* Declaration of Barry Murphy in Support of Defendant's Motion by Order to Show Cause to Transfer Venue, dated January 16, 2026 ("Murphy Dec'l."), Dkt. 12, ¶ 10. The terms "your or others' Content" and "your or others' use of the Service" cannot, by any stretch of ordinary or legal meaning, encompass a product's own architecture, design, training or output. Those are the product's own conduct and content, and by extension that of its creators—independent of any

users—and thus Plaintiff's claims fall outside the ambit of the forum-selection clause upon which Defendants' motion to transfer venue relies.

Plaintiff's claims are grounded in causes of action that include product liability, negligence, defamation, and nuisance based on xAI's own content and services: "xAI's product Grok, a generative artificial intelligence ("AI") chatbot, uses its AI photo-editing capabilities to undress, humiliate and sexually exploit victims – creating genuine authentic looking altered deepfakes," "xAI ignored internal warnings and rolled back its guardrails to enable Grok to mass produce and publish sexually explicit material" including of St. Clair. Dkt. 36, ¶¶ 2–3 (First Amended Complaint). For this forum-selection clause to reach Plaintiff's claims, it would need to read "your or others' **or our** Content" or "your or others' **or our** use of the Service." Of course, it does not—and the Court should not rewrite the clause for Defendants here.

## III. DEFENDANTS CANNOT BRING THIS LAWSUIT WITHIN X'S TOS.

Defendants have been clear that Grok is distinct from X, yet they now appeal to X's wholly independent TOS in a dispute where X is a non-party, to avail itself of the Texas forum where it desires to litigate. This cannot be. Plaintiff's claims derive from xAI's design, manufacture and release of Grok, and product defects in the Grok chatbot itself. Defendant cannot bail itself out now by muddying the waters at the eleventh hour in supplemental briefing after repeatedly proclaiming that xAI, and not X, is the culpable entity vis-à-vis Grok.[1]

Defendants have repeatedly and emphatically insisted that X and xAI are distinct entities, and that only xAI controls Grok. Dkt. 26 at 19:22-24 ("[T]hey're distinct companies, distinct services, and they have distinct sets of Terms of Services."); Dkt. 26 at 24:5-9 ("It's just a matter

[1] Defendants cite three cases in which other courts have granted similar motions to transfer venue pursuant to X's terms of service. *See* Dkt. 41 at 2, *citing Doe v. X Corp.*, 2025 WL 3500543, at *7 (N.D. Cal. Nov. 6, 2025), *Taddeo-Waite v. X. Corp.*, 2025 WL 3237422, at *4 (D. Conn. 2025), and *Eliza Labs, Inc. v. X Corp.*, 2025 WL 3003766, at *4 (N.D. Cal. Oct. 27, 2025). However, unlike here, X is a named party in each of these lawsuits, none of which are binding on this Court.

of x.AI LLC, the entity, owns and operates Grok...it's all the x.AI LLC that owns and operates the -- that AI service that is known as Grok[.]"); Dkt. 26 at 27:13-16 ("[I]t's important to have it very clear that Grok is a distinct service that is owned and operated by x.AI LLC, distinct from X Corp."). Although Defendants pounce on a stray statement by Plaintiff's counsel, it is a red herring. In context, it is apparent Plaintiff's counsel was explaining that this lawsuit pertains to whichever entities are responsible for Grok, a necessary clarification amidst Defendants' tongue-twisting bevy of corporate entities. *See* Dkt. 26 at 21:8-15 ("Much of the relief that we seek...relate to this Grok entity...so whoever controls it, whether it's X, x.AI, we're seeking relief against all of them.").

Further, the caselaw is crystal clear that whether web-based terms of service constitute a binding contract is a fact-specific inquiry into the design elements and content that Plaintiff saw and the specific language and manner of Plaintiff's purported assent. *See Applebaum v. Lyft, Inc.*, 263 F.Supp.3d 454, 466 (S.D.N.Y. 2017) (looking to "the design and content of that webpage"); *Wu v. Uber*, 43 N.Y.3d at 303 (looking to "the design and content of the relevant [user] interface to determine if the contract terms were presented to the [user] in a way that would put her on inquiry notice of such terms"); *Rigano v. Uber Technologies, Inc.*, 84 Misc.3d 1208(A), 218 N.Y.S.3d 799, at *4–6 (N.Y. Sup. Ct. 2024) (looking to the language presented to the user; use of pop-ups or checkboxes; color and formatting of hyperlinks; capitalization and bolding of headers, and other visual and functional design features of the user interface). Defendants have presented no such evidence to show that X's TOS constitute a valid contract binding Plaintiff.

If Defendants now believe X bears liability, they have every right to implead X as a third-party defendant. Even so, xAI should not get the benefit of a non-party's terms of service, especially when it invokes those terms based on a corporate shell game of its own design.

Accordingly, Defendants' last-ditch effort to invoke X's terms of service as a backdoor to transfer this case to Texas must fail.

## IV. DEFENDANTS' EVIDENCE SHOWS PLAINTIFF'S COMMUNICATIONS WITH GROK WERE NOT "USE" UNDER ITS TOS.

Defendants attempt to evade the fundamental defects above by characterizing Plaintiff's communications with Grok as "use" sufficient to retroactively impose contractual obligations on her derived from its TOS. However, that argument falls apart under the slightest scrutiny.

Plaintiff's communications with Grok during the relevant period were to address its ongoing sexual harassment, demand that Grok stop generating and disseminating degrading, explicit and nonconsensual deepfake content depicting her and request Grok remove any such content it had already generated and disseminated on X. Defendants' newest example, in which Plaintiff asks Grok on January 6, 2026, why it was not replying to her publicly about the deepfakes, changes nothing. *See* Dkt. 30, ¶¶ 12–15. Each of Plaintiff's queries cited by Defendants relate back to her attempts to engage Grok to manage its ongoing assault on her privacy and dignity. If Defendants' theory were accepted, any attempt to stop abuse on an online platform would itself constitute contractual "use," and any victim would be deemed to have assented to that platform's TOS—regardless of how onerous or outlandish its terms—merely by objecting to abuse perpetrated without the victim's consent. Imagine a scenario, for example, where a parent must create an account on a social media platform to report sexual exploitation of their child or with an online retailer to inform customer service that it should stop selling lethal chemicals used for suicide. Defendants' position would permit companies to draft away any notion of consumers' freedom of contract by declaring that objection is "use," silence is "agreement," and harm is "acceptance." Contract law does not countenance such semantic inversion.

Further, New York courts are clear that while the Internet has created novel situations, "it has not fundamentally changed the principles of contract." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). Online contracts still require the classic bedrock elements of contract formation, including mutual assent. *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017). To bind a user to web-based terms of service, the offeree must have been put on inquiry notice of the existence of contract terms and have objectively manifested assent to such terms by words or conduct. *Castro v. Jem Leasing, LLC*, 214 A.D.3d at 475–76, *citing Meyer*, 868 F.3d at 79–80. As discussed in the foregoing sections, Defendants' own evidence shows that this did not occur. Plaintiff's inquiries to Grok do not change this conclusion, because no reasonable observer could conclude that queries related to the removal of deepfake pornography depicting a person, posted by the company's own chatbot without that person's knowledge or consent, could manifest an objective assent to be bound by any contractual terms absent any notice to that effect. Plaintiff's alleged "use" of Grok—to beg the bot to remove deepfake images depicting her underage, covered in semen, stripped down to a floss bikini, and wearing a bikini emblazoned with swastikas as a Jewish woman and cease producing any further images—cannot bind her to any version of Defendants' TOS.

Accordingly, Defendant cannot establish that this case should be transferred to Texas.

## V. ENFORCING A FORUM-SELECTION CLAUSE HERE WOULD BE UNREASONABLE AND UNJUST.

Finally, even if the Court finds Defendants somehow met their burden to show that the forum-selection clause should be presumptively enforced, Plaintiff can readily make the requisite showing that transferring this case to the Northern District of Texas is unreasonable and unjust.

*Martinez* is clear that a "strong showing" by Plaintiff that enforcing a forum-selection clause would be "unreasonable and unjust" can defeat the presumptive enforcement of such a

clause, no matter how strong the defendant's interests in enforcement or the public policy interests in favor of enforcing such clauses generally. 740 F.3d at 217.

Transferring this case would make meaningful relief practically impossible. All entities related to xAI (which, since the Parties' last court appearance seven business days ago, has been acquired by SpaceX): x.AI Holdings Corp., x.AI LLC, and x.AI Corp—and even Elon Musk himself—are represented by the same counsel in Midtown Manhattan, with vast resources to continue litigation and initiate vexatious procedural maneuvers *ad nauseum*. Plaintiff, by contrast, is a 27-year-old student and single mother of two without a billionth of the resources as Defendant. Dkt. 7-5, ¶ 2.

To force Plaintiff to litigate in a far-flung forum on the grounds that she interacted with Grok, despite the fact that her queries were limited to her desperate bid to get the chatbot to remove the sexually explicit deepfakes of her that it created and cease producing or disseminating any further deepfakes, punishes her for attempting to use the tools available to end this nightmare .

This is the very definition of unreasonable and unjust, and the Court should exercise its discretion to decline to hand xAI a victory that would defy any reasonable notion of fairness.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion to transfer venue to the Northern District of Texas and should then proceed to the merits of Plaintiff's case.

Date: February 5, 2026
Brooklyn, New York

*/s/ Carrie Goldberg*

**C.A. GOLDBERG, PLLC**
Carrie Goldberg, Esq.
Laura Hecht-Felella, Esq.
Naomi Leeds, Esq.
Katie McKay, Esq.
C.A. Goldberg, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908
carrie@cagoldberglaw.com
laura@cagoldberglaw.com
naomi@cagoldberglaw.com
mckay@cagoldberglaw.com

*Attorneys for Plaintiff Ashley St. Clair*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing memorandum complies with Local Rule 7.1(c). The memorandum contains 3,327 words, exclusive of the portions exempted by Rule 7.1(c), as determined by the Word Count feature in Microsoft Word.

*/s/ Carrie Goldberg*
Carrie Goldberg