***PRIVILEGED & CONFIDENTIAL***
***ATTORNEY WORK PRODUCT***

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASHLEY ST. CLAIR,<br><br>*Plaintiff*,<br><br>v.<br><br>X.AI HOLDINGS CORP., ET AL.,<br><br>*Defendants*. | Case No. 1:26-cv-00386<br><br>**FURTHER SUPPLEMENTAL DECLARATION OF BARRY MURPHY IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE** |

I, Barry Murphy, declare under penalty of perjury as follows:

1. I am the Legal Director of Safety, Content, and Law Enforcement at X.AI LLC ("X.AI LLC" or "X.AI").

2. I submit this further supplemental declaration in support of Defendants' Motion to Transfer Venue and in response to the Court's order (Dkt. 49).

3. I am familiar with the records of X.AI LLC and have personal knowledge of the matters discussed below.

**A. <u>X.AI's Account Information for Ms. St. Clair</u>**

4. As noted in my prior declarations dated January 16, 2026, January 23, 2026, and January 30, 2026, X.AI's corporate records reflect that Plaintiff Ashley St. Clair signed up for an X.AI account on December 10, 2024.

5. I previously submitted as Exhibit A to my January 30, 2026 declaration a full data print out of Ms. St. Clair's account information, as that information is stored in X.AI's systems. That Exhibit is reproduced below:

```
{
  "user_id": "54a9203e-b08c-44f3-be77-9d3ebcbf44d5",
  "create_time": "2024-12-10T19:08:19.178802Z",
  "email": null,
  "password": null,
  "profile_image":
  "users/54a9203e-b08c-44f3-be77-9d3ebcbf44d5/3xD1B8sJ20PHvltI-profile-picture.webp",
  "given_name": "Ashley St. Clair",
  "family_name": "",
  "acls": [],
  "x_subscription_type": "None",
  "x_user_id": "2874102076",
  "x_username": "stclairashley",
  "apple_user_id": null,
  "email_confirmed": false,
  "tos_accepted_version": 0,
  "tos_accepted_last_timestamp": null,
  "blocked_reason": null,
  "delete_time": null,
  "session_tier_id": "3",
  "birth_date": null,
  "email_domain": null,
  "grok_db": "legacy",
  "vercel_avatar_url": null,
  "vercel_email": null,
  "vercel_id": null,
  "vercel_name": null,
  "vercel_role": null,
  "google_email": null,
  "google_user_id": null,
  "pw_email": null,
  "pw_normalized_email": null,
  "signed_in_with_google": false,
  "email_subscribed": false,
  "workos_user_id": null,
  "migrated_from_x": false,
  "x_migration_status": null,
  "microsoft_user_id": null,
  "organization_id": null,
  "organization_role": null,
  "risk_level": null,
  "organization_rbac_role_id": null
}
```


6. I understand that the Court has asked the parties to address this data, particularly "what [it] means," including the "significance of the terms 'null' and 'false.'"

7. I set forth below what the data and those terms (as well as other terms present in the data field) mean.

8. <u>First</u>, the data shows that Ms. St. Clair created her X.AI account on December 10, 2024.

9. The first row—the data field "user_id"—contains the X.AI user id for this account. Each X.AI account has a unique user id. Several rows down is the data field "given_name," which says "Ashley St. Clair." Several rows beneath that is the field "x_user_id" which matches the X account id for Ms. St. Clair. *See* Dkt. 30 (Supplemental Declaration of Samantha Birkenfeld-Malpass), ¶ 15.

10. Right underneath that row is the "x_username" that is associated with this X.AI account. That data field reads "stclairashley," which is Ms. St. Clair's X account handle:




11. Thus, the data reflected in Exhibit A to my January 30, 2026 declaration is the data for Ms. St. Clair's X.AI account.

12. The data field "create_time" says "2024-12-10T19:08:19.178802Z," meaning Ms. St. Clair's X.AI account was created on December 10, 2024.

13. Certain data fields in the data above contain "0" or "null." That is because X.AI does not populate those data fields for consumer users or they are not applicable to those users, such as Ms. St. Clair. For example, "null" appears in data field "apple_user_id" because Ms. St. Clair has not signed into her X.AI account using her iCloud profile.

14. Ms. St. Clair's is wrong when she says that "null" next to "tos_accepted_last_timestamp" or "0" next to "tos_accepted_version" means that "Defendants' own internal records show that Plaintiff never accepted its TOS." Supp. Opp. Br. at 5. What "null" and "0" mean is that the data fields are simply not populated one way or the other because X.AI does not retain this data.

15. However, all Grok users signing up in December 2024, necessarily including Ms. St. Clair, were shown the following screen, which states that "[b]y continuing, you agree to xAI's Terms of Service and Privacy Policy," and contains a link to the Terms of Service, and all Grok users, including Ms. St. Clair, who proceeded to sign up thereby consented to xAI's Terms of Service.




16. Other data fields in Exhibit A say “false” next to them. That is because the designation to which “false” is listed does not apply to Ms. St. Clair’s account. For example, “false” appears in data field “signed_in_with_google” because Ms. St. Clair’s X.AI account was not created using Google login information. Similarly, “false” appears in the data field “email_subscribed” because Ms. St. Clair’s X.AI account was not created using an email address.

17. This is not surprising, because, as I previously stated, Ms. St. Clair “signed up for an X.AI LLC account . . . through her X account.” *See* Dkt. 23 (Declaration of Barry Murphy), at ¶ 4. X users may sign up for X.AI accounts without using third-party login information such as email addresses, Google accounts, and Apple accounts.

18. X users, like Ms. St. Clair, may sign up for X.AI accounts without using third-party login information, as shown by the above screenshot from X.AI’s website, which permits “[s]ign[ing] up with X” as an alternative to signing up with “[e]mail” or “with Google” (or subsequently, with Apple).

19. The data field “grok_db” contains “legacy” because Ms. St. Clair’s conversation data is stored in X.AI’s first database.

20. The data field “session_tier_id” was used to indicate how many messages per hour a user was allowed to send. The higher the tier, the more messages a user could send. X.AI no longer uses this field.

21. <u>Second</u>, I understand that, referring to this data, Ms. St. Clair asserts that, “[b]ased on this data, it is not clear [she] could even log into this account if she wanted to.” Supp. Opp. Br. at 6.

22. That assertion is false. X.AI's records reveal Ms. St. Clair's X.AI account was repeatedly logged into shortly after the account's creation. Enclosed as **Exhibit A** hereto is a true and correct copy of the data of Ms. St. Clair's log-in and log-out activity on the Grok application, i.e., "sessions." **Exhibit A** is a record kept in the ordinary course of X.AI's business and was made at or near the time of the activity as part of a regular practice of that activity.

23. A "session" refers to each time Ms. St. Clair logged into the Grok application. Each session has a unique "session_id." The session_id is linked to the user_id, which is listed directly below. The user_id in the below excerpt is 54a9203e-b08c-44f3-be77-9d3ebcbf44d5, which, as shown in Exhibit A to my January 30, 2026 declaration, is Ms. St. Clair's X.AI user id. Underneath the user_id is a data field called "create_time," which shows when the session began.

24. So, for example, the below shows that Ms. St. Clair was able to, and did, log into her X.AI account to begin a chat conversation with Grok on January 1, 2025:

```
    "session_id": "ffc251e9-b225-480a-aadb-d08de3e14d10",
    "user_id": "54a9203e-b08c-44f3-be77-9d3ebcbf44d5",
    "create_time": "2025-01-01T19:25:35.45679+00:00",
```

25. The balance of that document shows that Ms. St. Clair logged into her X.AI account multiple times in December 2024—December 10, 11, 16, and 24—as well.

26. Further, I previously submitted as Exhibit B to my January 30, 2026 declaration a data print out of X.AI's records of Ms. St. Clair's conversations on the Grok application. The information in that data print out confirms that Ms. St. Clair had numerous conversations on the Grok application between December 16, 2024 and January 1, 2025.

27. Finally, I note that Ms. St. Clair's public X posts refer to her use of Grok shortly after creating her account, including her use of the image-generation feature:




**B. X.AI Beta Program**

28. I understand that the Court also asked the parties to "provide more information about" the "'Early Access to xAI' program," including its "significance" and "whether there were terms of service" presented to participants of the program.

29. The "'Early Access to xAI' program" mentioned in Ms. St. Clair's affirmation and exhibits refers to accessing a preview beta build of the Grok iOS application. In other words, it was a way to download a beta version of the application before it was public.

30. Getting access to that beta application through the "'Early Access to xAI' program" did not create an X.AI account for any individual.

31. Moreover, no users were migrated from the beta program to X.AI. All X.AI account holders, whether or not they participated in this beta program, have had to create an X.AI account pursuant to the processes set out in this declaration and my prior declarations.

### C. TestFlight

32. I understand that the Court also asked the parties to "provide more information about" the TestFlight application and its "significance."

33. TestFlight is an application provided by Apple that enables application developers to distribute beta versions of applications to users for testing to improve application quality before official release. Effectively, it is a way for an application to be distributed to a select circle of individuals for testing.

34. X.AI permitted certain individuals to beta test the Grok application through TestFlight in December 2024. TestFlight has no intersection with, or bearing on, X.AI account creation or account management.

35. An X.AI account was required to use the beta version of the Grok application through TestFlight. All individuals who beta tested the Grok application through TestFlight had to independently sign up for an X.AI account. The process to create an X.AI account was the same as any other X.AI user: the would-be beta application user would be required, upon opening the beta version of the application, to create an X.AI account (or sign in to their existing X.AI account, if they already made one), and would be presented with a webpage saying, "[b]y continuing, you agree to x.AI's Terms of Service and Privacy Policy."

36. This is true regardless of how someone was invited to beta test the application (in Ms. St. Clair's affirmation, she says "some engineers" invited her).

37. Ms. St. Clair repeatedly used the Grok application during this time period, as reflected in Exhibit A hereto, and Exhibit B to my January 30, 2026 declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 10, 2026
Austin, Texas

Barry Murphy