UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

ASHLEY ST. CLAIR,

                                Plaintiff,

                  -against-                             **1:26-cv-00386-ALC**

X.AI HOLDINGS CORP.,                      **OPINION & ORDER**

                  Defendants.

---------------------------------------------------------- x

**ANDREW L. CARTER, JR., United States District Judge:**

For the reasons discussed below, this case is hereby transferred to the Northern District of Texas.

## BACKGROUND

Plaintiff Ashley St. Clair brings this action against Defendants X.AI Holdings Corp., X.AI Corp., and X.AI LLC (collectively, the "X.AI Entities"). Defendant X.AI Holdings Corp. is the direct parent entity of Defendant X.AI Corp and the indirect parent entity of both X Corp. and Defendant X.AI LLC. *See* ECF No. 65 at 2. X Corp. owns and operates the X platform, which was formerly known as Twitter. *See id.* Defendants operate the artificial intelligence chatbot known as Grok. Plaintiff brings this action, alleging in relevant part that X.AI's product Grok was used to create and disseminate "altered, deepfake content of Plaintiff . . . on the social media platform X." *See* ECF No 1. at 7.

1

On January 15, 2026, Plaintiff commenced an action in Supreme Court of the State of New York, County of New York. *See* ECF No. 1. That same day, Defendant X.AI Holdings Corp. removed the State Court Action to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446, asserting that federal subject matter jurisdiction is proper under diversity jurisdiction. *See id.* On January 16, 2026, Defendants filed an order to show cause with emergency relief, seeking to transfer the case to the United States District Court for the Northern District of Texas. *See* ECF No. 11. That same day, this Court entered an Order to Show Cause ("OSHOW") as to why the matter should not be transferred as requested, directing Plaintiff to respond. *See* ECF No. 14. Plaintiff filed her memorandum of law in opposition on January 21, 2026, and Defendants thereafter filed their reply memorandum of law in support on January 23, 2026. *See* ECF Nos. 16, 21.

This Court held a conference on January 27, 2026, and subsequently ordered additional records and briefing on the issue of the forum selection clause at dispute in this case. *See* ECF No. 25. Upon receiving the additional submissions from the Parties, the Court ordered the Parties to submit additional declarations or affidavits prior to holding another conference on February 13, 2026. *See* ECF Nos. 41-59. Following the conference on February 13, the Court once again ordered additional briefing on the issue of whether X.AI is able to assert the forum selection clause in X Corp's terms of service. *See* ECF No. 61. Defendants filed their supplemental briefing on February 18, 2026, and Plaintiff filed hers on February 23, 2026. *See* ECF Nos. 65, 69. The Parties thereafter requested leave to file additional submissions to conclude the briefing on this issue. *See* ECF Nos. 76-92. The Court now considers this issue fully briefed.

## STANDARD OF LAW

Forum-selection clauses "may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Of Texas*, 571 U.S. 49, 59 (2013); *see also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 832 (S.D.N.Y. 2012) ("Federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer this case.") Section 1404(a) provides that "[for] the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "[A] proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co.*, 571 U.S. at 59-60. Indeed, "'contractual forum-selection clauses will be enforced unless it can clearly be shown that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Fteja v. Facebook, Inc.*, 841 F. Sup. 2d at 833 (quoting *Bense v. Interstate Battery Sys. Of Am., Inc.* 683 F.2d 718, 721-22 (2d Cir. 1982)).

The Second Circuit applies a four-part analysis in determining whether to enforce a forum-selection clause. *See, e.g., Phillips v. Audio Active Ltd*., 494 F.3d 378, 383 (2d Cir. 2007). The first question is "whether the clause was reasonably communicated to the party resisting enforcement." *Id*. The second inquiry requires the Court "to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so." *Id*. The third question "asks whether the claims and parties involved in the suit are subject to the forum selection clause." *Id*. If the forum selection clause was reasonably communicated, has mandatory force, and covers the claims and parties involved in the dispute, then the clause is presumptively enforceable. *See id*. Once a mandatory forum selection clause is deemed valid, the burden then shifts to the plaintiff on the fourth inquiry. Indeed, "[t]he fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id*. (internal quotation and citation omitted). Federal law applies in determining "whether an otherwise mandatory and applicable forum selection clause is enforceable" under step four in the analysis. *Id*. at 384.

## DISCUSSION

Defendants argue they should be able to enforce the forum selection provision in Version 21 of X's Terms of Service as an intended third-party beneficiary. The Court finds that Plaintiff manifested assent and agreed to be bound by that version of the TOS. Finding Plaintiff did manifest assent, the Court holds that the forum selection clause governs this dispute. Last, the Court finds that the plaintiff has failed to sustain her burden to rebut the presumption of enforceability as to the forum selection provision.

### I.    Plaintiff Manifested Assent to Version 21 of X's TOS

The Parties' arguments primarily pertain to the forum selection clause contained in Version 21 of X's terms of service. Plaintiff argues that she did not agree to be bound by Version 21 of X's terms of service which went into effect on January 15, 2026. *See* ECF No. 91 at 1. To determine whether Plaintiff manifested assent to Version 21 of the TOS, the Court must turn to state-law principles. *See Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 387 (E.D.N.Y. 2015) ("Determining the validity and enforceability of a contract is an issue of substantive state law."). While there is a choice of law provision in Version 21 of the TOS, "[r]elying on a contractual provision before a contract has been found to have been accepted by the parties as binding is unacceptable." *Id.* at 387-88. As such, the Court must turn to substantive state law to determine the agreement's validity. In the instant case, the substantive laws of New York and Texas are at issue. The Court need not engage in a choice-of-law analysis between New York and Texas law as there is no conflict between the two states' laws on the question of contract formation and mutual assent. *See Hastings v. Nifty Gateway, LLC*, 724 F. Supp. 3d 241, 249 (S.D.N.Y. 2024); *see also Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) (acknowledging that where two states "apply substantially similar rules for determining whether the parties have mutually assented to a contract term. . . [w]hich state's law applies is [] without significance").

The Court notes that Plaintiff concedes she agreed to be bound by Version 20 of X's TOS but did not agree to Version 21 which contains the relevant third-party beneficiary provision. "The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019) (internal citations omitted). "Where an offeree does not have actual notice of certain contract terms, he is nevertheless bound by such terms if he is on inquiry notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Id*. To determine whether an offeree is on inquiry notice of a specific contract term, "New York courts look to whether the term was obvious and whether it was called to the offeree's attention" which "often terms on whether it was presented to the offeree is a clear and conspicuous way." *See id*.  (internal quotations and citations omitted). Specifically in the context of web-based contracts, courts consider "the design and content of the relevant interface to determine if the contract terms were presented to the offeree in a way that would put her on inquiry notice of such terms." *See id*.

In the instant case, Section 1 of Version 21 of X's TOS provides, in relevant part, "You may use the Services only if you agree to form a binding contract with us . . . If you are (i) accepting these Terms and/or using the Services, which constitutes acceptance of these Terms. . . you represent and warrant that you are authorized to do so." *See* ECF No. 91-2 (hereafter "Version 21"), § 1.

6

On December 16, 2025, Plaintiff assented to X's Terms of Service and Privacy Policy by accepting the updated Terms. On this date, "X posted a notice to its website, notifying users that X was 'updating the X Terms of Service and Privacy Policy'; 'summar[izing]' those changes; 'encourg[ing] [users] to read these changes in full since they govern your use of X'; and reminding users that '[i]f you continue to use our products or services on or after January 15, 2026, you agree' to the updated Terms of Service and Privacy Policy." *See* ECF No. 65 at 3. That same day, X also sent all users a prompt through the X platform informing them of the revised terms. Defendants provided records reflecting Plaintiff received a prompt for Version 21 of the TOS and clicked through them before clicking on the "Got It" button on December 16, 2025, at 11:37a.m. *See id*. at 4; *see also* ECF No. 29 ¶¶ 10-11; *see also* ECF No. 29-3 at 1, 6. The Court considers this to be sufficient to put Plaintiff on inquiry notice of the updated TOS. Whether or not Plaintiff actually read the updated TOS does not preclude a determination of reasonable notice here as Plaintiff was clearly prompted to further examine the TOS and notified of the revised terms. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79 (2d Cir. 2017) ("While it may be the case that many users will not bother reading the additional terms, that is the choice the user makes; the user is still on inquiry notice."). As such, Plaintiff manifested her assent to be bound by the updated terms on this date even though the updated terms did not go into effect until January 15, 2026.

Plaintiff asserts that her "last post on X occurred on January 14, 2026—the day ***before*** the current version of X Corp.'s TOS (Version 21)" became effective. *See* ECF No. 69 at 2.  As such, Plaintiff argues that she is not bound by Version 21 because Version 21 "only bind[s] X users who 'continue to use our products or services on or after January 15, 2026.'" *See id*.

7

The fact that Plaintiff filed the state court complaint on January 15, 2026—the same day Version 21 went into effect—does not preclude the Court's finding that she manifested assent to Version 21's terms.[1] First, Plaintiff clicked the "Got It" button acknowledging the revisions were to go into effect prior to filing the state court complaint. As such, Plaintiff manifested her assent to be bound by Version 21 even though the terms were not in effect yet. Moreover, Plaintiff filed an amended complaint on February 3, 2026, after Version 21 was in effect.

In addition, Defendants have provided sufficient evidence showing Plaintiff's use of X's services on or after January 15, 2026. Defendants provided an access log of Plaintiff's X account showing that she accessed the X platform multiple times after January 15, 2026. *See* ECF No. 71, ¶¶ 9-10; *see also* ECF No. 71-1 at 5-7. Plaintiff argues to the contrary, stating her final post on X was on January 14, 2026, and that the remaining data points referenced by Defendants are ghost pings. *See* ECF No. 92. Plaintiff has alternatively explained these data points to be referencing her visiting the X webpage to review the TOS. *See* ECF No. 76-1, ¶ 17. Plaintiff argues Defendants have offered "no substantive use of X- no posts, replies, direct messages, links, likes, retweets, etc., on or after January 15, 2026." *See id*. at 3. While Plaintiff may be correct that Defendants do not point to what she terms "substantive use of X," this is not necessary to constitute acceptance of Version 21 of the TOS. Section 6 of Version 21 states that one agrees to be bound by the terms by "continuing to access or use the Services after those revisions become effective." Defendants provided documents showing Plaintiff *accessed* the X platform multiple times between January 16, 2026, and February 3, 2026. *See* ECF No. 71-1 at 5-7. This is sufficient to establish Plaintiff manifested assent to Version 21 of the TOS.

II.     **The Mandatory Forum Selection Clause in Version 21 of X's TOS Governs This Dispute**

Section 6 of Version 21 of X's Terms of Service provides as follows (emphases added):

The laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us, notwithstanding any other agreement between you and us to the contrary. ***Notwithstanding any other agreement to the contrary, all disputes related to these Terms, the Services, or any patents—including without limitation disputes related to or arising from any Content (whether your or others' Content), or your or others' use of the Services or the complete or partial termination thereof—shall be brought and must proceed exclusively in the federal or state courts located in Tarrant County, Texas, United States,*** and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum. For the avoidance of doubt, the choice of law and forum selection provisions of this paragraph shall apply regardless of whether a dispute or any claims contained therein are based in contract, tort, statute, common law, or otherwise, and the choice of law and forum selection provisions of this paragraph ***shall apply to pending and future disputes and shall apply to your dispute regardless of when the conduct relating to the dispute arose or occurred. The choice of law and forum selection provisions of this paragraph shall also extend to disputes involving our U.S. corporate affiliates, who are intended third-party beneficiaries of this paragraph.***

As an initial matter, this is a mandatory forum selection clause as it states that all disputes must proceed in the courts in Texas. Further, pursuant to Section 6 of Version 21, this is a dispute that falls within X's TOS. As stated above, the Terms cover all disputes arising from or relating to the Terms, any individual's use of the Services, or any individuals Content. Services is defined in the preliminary statement to Version 21 of the TOS as "access to and use of, and anything otherwise relating to, our or our corporate affiliates' services, including out various websites, SMS, APPIs, email notifications, applications, buttons, midgets, ads, commerce services, and our other covered services[2]." Version 21 at 4. Content is defined as "any information, texts, links, graphics, photos, audio, videos, or other materials or arrangements of materials uploaded, downloaded or appearing on the Services (collectively referred to as 'Content')". *See id*. Also relevant, the Terms apply to pending disputes even if the conduct related to the dispute arose earlier. Plaintiff brings this action, alleging in relevant part that X.AI's product Grok was used to create and disseminate "altered, deepfake content of Plaintiff . . . on the social media platform X." *See* ECF No 1. at 7. As such, these allegations concern a dispute relating to the creation of certain Content and use of the Services on X and X.AI. This is clearly such a dispute that is governed by Version 21 of X's TOS.

### III.    Defendants Can Enforce the Forum Selection Clause as a Third-Party Beneficiary

---

[2] The Court notes that the language "other covered services" is hyperlinked to a webpage on X titled "X Services and Corporate Affiliates." Plaintiff attempts to use this hyperlink to argue that because only Vine and Twitpic are listed on that webpage, no other companies such as X.AI should be considered corporate affiliates. This argument is unavailing. Indeed, the language "other covered services" comes last in a series of what constitutes X's services. Earlier in the same list was a reference to other "corporate affiliates' services."

Version 21 of the TOS clearly states, "The choice of law and forum selection provisions of this paragraph shall also extend to disputes involving our U.S. corporate affiliates, who are intended third-party beneficiaries of this paragraph." *See* Version 21, § 6. Under both Texas and New York state law, Defendants can enforce the forum selection clause as a third-party beneficiary. *See, e.g. In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) ("A third-party beneficiary may enforce a contract to which it is not a party if the parties to the contract intended to secure a benefit to that third party"); *see also In re Generali COVID-19 Travel Ins. Litig.*, 577 F. Supp. 3d 284, 292 (S.D.N.Y. 2021) ("The touchstone of third-party beneficiary status is the intent of the parties to the agreement.") (citing to *Port Auth. of N.Y. & N.J. v. Brooklyn Union Gas Co.*, 179 A.D.3d 1106, 119 N.Y.S.3d 191, 194 (2020)). The language in the TOS clearly notes that all "U.S. corporate affiliates" are "intended third-party beneficiaries." Defendants argue they are all corporate affiliates of X, as "they are all either the indirect parent corporation or entities controlled by a common parent." *See* ECF No. 65 at 6.  Indeed, "[a]n 'affiliate' is 'a person who controls, is controlled by, or is under common control with another person.'" *Cadena Commercial USA Corp. v. Texas Alcoholic Beverage Comm'n*, 518 S.W.3d 319, 329 (Tex. 2017) (quoting Tex. Bus. Orgs. § 1.002). Specifically, Defendant X.AI Holdings Corp. is the direct parent entity of Defendant X.AI Corp and the indirect parent entity of both X Corp. and Defendant X.AI LLC. *See* ECF No. 65 at 2. As such, Defendants are intended third-party beneficiaries of Version 21 of X's TOS and may enforce the forum selection provision contained therein.

11

### IV.    Plaintiff Fails to Rebut the Presumption of Enforceability

Because the Court has found that the forum selection clause was reasonably communicated, has mandatory force, and covers the claims and parties involved in the dispute, the clause is therefore presumptively enforceable. *See Phillips v. Audio Active Ltd.*, 494 F.3d at 383. As such, the burden now falls on Plaintiff to rebut the presumption of enforceability. Indeed, "[t]he fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* Plaintiff relies on *Atlantic Marine* to argue the case should not be transferred pursuant to the forum selection clause due to extraordinary circumstances. *See* ECF No. 16 at 15-16. In *Atlantic Marine*, the Supreme Court provided that "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. at 62-63. A "district court may consider arguments about public-interest factors only." *Id.* at 64. In the Second Circuit, a party can overcome the enforcement of a forum selection clause only where:

> (1) its incorporation as the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

*Starkey v. G Adventures*, 796 F. 3d 193, 198 (2d Cir. 2015) (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 228 (2d Cir. 2014)).

12

Plaintiff argues that New York has a strong public policy interest in having the dispute heard in its own courts, that this case is localized to New York as the injuries occurred and were felt in New York, and that the legal right for recovery arises under New York statutory law. *See* ECF No. 16 at 16-17. As an initial matter, the Court notes that to the extent Plaintiff argues Texas would be forced to apply New York law, that is not the case. The ordinary choice-of-law rules that apply to § 1404(a) transfers do not apply in cases where "a defendant's motion is premised on enforcement of a valid forum-selection clause." *Atl. Marine Const. Co.*, 571 U.S. at 65. In any event, X's TOS contain a choice-of-law provision stating Texas law governs. *See* Version 21, § 6. As for Plaintiff's argument about New York's public policy interest in hearing this dispute in its own courts, this argument is unavailing as it overlooks the purpose of including forum selection clauses in the first place. "When parties have contracted in advance to litigate disputes in a particular forum, court should not unnecessarily disrupt the parties' settled expectations." *Atl. Marine Const. Co.*, 571 U.S. at 66.

As such, Plaintiff has failed to sustain her burden in rebutting the presumption of enforceability of the forum selection clause.[3]

**CONCLUSION**

For the reasons discussed above, Defendants motion to transfer is hereby **GRANTED.**
The Clerk of Court is respectfully directed to transfer this matter to the United States District Court for the Northern District of Texas. The Court of Clerk is further directed to terminate the pending letter motion at ECF No. 94 as such request is **DENIED.**[4]

**SO ORDERED.**

**Dated:  June 23, 2026**

      **New York, New York**                  **ANDREW L. CARTER, JR.**

                                                **United States District Judge**

---

[3] The Court notes that Plaintiff also raises the argument that being forced to litigate in Texas may make it "so that trial in Texas will be so difficult and inconvenient that [Plaintiff] effectively will be deprived of her day in court." *See* ECF No. 16 at 6. This argument seems to be part of the section relating to a balance of convenience factors with respect to the first-filed rule which is not addressed in Plaintiff's brief. The Court does not transfer this case based on the first-filed rule, nor does the Court transfer the case based on the convenience of the parties. As discussed above, convenience of the parties is not a consideration on a § 1404(a) motion based on a valid forum selection clause. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. at 62-63; *see also Martinez v. Bloomberg LP*, 883 F. Supp. 2d at 522 ("[t[he mere fact that litigation in a foreign forum is 'more costly or difficult' does not provide a 'sufficiently strong showing' that enforcement of a forum selection clause would be unreasonable or unjust.").

[4] The Court notes that Plaintiff filed a letter motion for leave to file supplemental in camera submission and request for a judicial conference. *See* ECF No. 94. Specifically, Plaintiff "seeks additional sealed briefing to present in camera evidence from a separate" matter. This request is **DENIED**. This material has no bearing on the Court's analysis regarding the forum selection clause as it relates to this case.